**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | |
|  | : | CHAPTER 11 |
| BLANCHE ZWERDLING | : | |
| REVOCALBE LIVING TRUST, | : | CASE NO.:   15-12920 (NLW) |
|  | : | |
| Debtor. | : | JUDGE:   Hon. Novalyn L. Winfield |
|  | : | |

**OPINION**

**A P P E A R A N C E S :**

Piotr Rapciewicz, Esq.
Law Office of Piotr Rapciewicz, LLC
445 Brick Boulevard, Suite 205
Brick, New Jersey 08723
Co-Counsel for the Debtor, Blanche Zwerdling Revocable Living Trust

Robyne D. LaGrotta, Esq.
LaGrotta Law, LLC
900 Lanidex Place, Suite 225
Parsippany, New Jersey 07054
Co-Counsel for the Debtor, Blanche Zwerdling Revocable Living Trust

Christopher E. Miller, Esq.
Hunziker, Jones & Sweeney, P.A.
Wayne Plaza II
155 Route 46 West
Wayne, New Jersey 07470
Counsel for Judgment Creditor, Susan E. Champion, Esq.

Linda Couso Puccio, Esq.
Fiorello, Puccio & Fiorello LLC
1044 Route 23 North, Suite 318
Wayne, New Jersey 07470
Judgment Creditor

1

Tania M. Nemeth, Esq.
Masessa & Cluff, Attorneys at Law
1524 Route 23 North
Butler, New Jersey 07405
Judgment Creditor

**THE HONORABLE NOVALYN L. WINFIELD, BANKRUPTCY JUDGE**

Before the Court is a *Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. § 105(a) and 11 U.S.C. § 1112(b)* ("Motion to Dismiss") filed by Susan E. Champion, Esq. ("Movant" or "Champion"), a judgment creditor of the Blanche Zwerdling Revocable Living Trust ("Debtor" or "Trust"). Joining in the Motion to Dismiss are three other judgment creditors: Linda Couso Puccio, Esq.; Tania M. Nemeth, Esq.; and Joseph A. Mecca, Esq. The Movant seeks dismissal on two grounds: (1) the Debtor is ineligible to be a debtor under 11 U.S.C. § 109(a) as the Debtor is not a business trust; and (2) the Debtor filed the petition in bad faith. Todd Trombetta, Blanche Zwerdling's grandson and the current Trustee of the Trust ("Todd"), opposed the Motion to Dismiss on behalf of the Debtor.

## I.   JURISDICTION

Jurisdiction over this contested matter arises pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   FACTUAL BACKGROUND

On February 20, 2015, the Debtor, by and through Todd as the current Trustee, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). The Debtor in this case is a trust, created on January 28, 1998 by the late Blanche Zwerdling ("Zwerdling"), as a self-settled revocable living trust. (*See* Verified Application of Susan E. Champion ("Champion's Verified App.") at ¶ 4, and Exhibit A attached thereto).

3

The Trust was funded with certain of Zwerdling's personal assets, including various bank accounts and three (3) parcels of real property that Zwerdling owned in her own name. (*Id*.). The real property was comprised of: (1) an 18-unit mixed residential and commercial property located at 255 Union Avenue, Paterson, New Jersey ("Union Avenue Property"); (2) a condominium in Delray Beach, Florida ("Florida Property"), sold in 2002; and (3) a townhouse located at 109-4 Crosby Avenue, Paterson, New Jersey ("Crosby Avenue Property"). (Champion's Verified App., Exhibit A, "Real Estate Properties Transferred into the Trust").

Upon creating the Trust, Zwerdling was both the Trustor and sole Trustee. (Champion's Verified App., at ¶ 5, and Exhibit A at Section 1.03). The beneficiary of the Trust is Zwerdling's granddaughter, Cheryl Trombetta ("Cheryl"). (Champion's Verified App. at ¶5, and Exhibit A at Section 3.03).

The stated purpose of the Trust is in Section 1.01: "[t]his Revocable Trust is formed to hold title to real and personal property for the benefit of the Trustor of this Trust and to provide for the orderly use and transfer of these assets upon the death of the Trustor . . . ." (Champion's Verified App., Exhibit A at Section 1.01).

The Trust provides that:

> During the life of the Trustor, should Trustor become incapacitated . . . the Trustee may, in the Trustee's absolute discretion, pay income and principal for the benefit of the incapacitated Trustor, and may pay to or apply for the benefit of that Trustor such sums from the net income and from the principal of the Estate as the Trustee, in the Trustee's absolute discretion, believes is necessary or advisable for the medical care, comfortable maintenance, and welfare of the Trustor.

(Champion's Verified App., Exhibit A at Section 2.02). The Trust did make distributions for Zwerdling's and Cheryl's personal spending, including expenses for hair salons, restaurants,

4

medical professionals, cable television, etc.   (Champion's Verified App. at ¶ 31, and Exhibit E).

The Trust gave the Trustee specific powers, including:

   a) Trust Estate – The Trustee may leave invested, any property coming into the hands hereunder in any form of investment, even though the investment may not be of the character of investments permitted by law to trustees, without liability for loss or depreciation in value.  The Trustee may sell, exchange or otherwise dispose of and reinvest property which may at any time be part of the Trust Estate upon such terms and conditions as the Trustee deems advisable.   The Trustee may invest and reinvest the Trust Assets from time to time in any property, real, personal, or mixed, including without limitation securities of domestic and foreign corporations and investment trusts or companies, bonds, debentures, preferred stocks, common stocks, mortgages, mortgage participations, and interests in common trust funds, all with complete discretion to convert realty into personalty or personalty into realty or otherwise change the character of the Trust Estate, even though such investment (by reason of its character, amount, proportion to the total Trust estate, or otherwise) would not be considered appropriate for a fiduciary apart from this provision, and even though such investment caused part or all of the total Trust Estate to be invested in investments of one type or of one business or company.

. . .

   o) Continuation of Business – The Trustee may continue any business or businesses in which I have an interest at the time of my death for so long as the Trustee may, in his or her sole discretion, consider necessary or desirable, whether or not the business is conducted by me at the time of my death individually, as a partnership or as a corporation wholly owned or controlled by me, with full authority to sell, settle and discontinue any of them when and upon such terms and conditions as the Trustee may, in his or her sole discretion, consider necessary or desirable.

   p) Retain Property for Personal Use – The Trustee may retain a residence or other property for the personal use of a beneficiary and to allow a beneficiary to use or occupy the retained property free of rent and maintenance expenses.

(Champion's Verified App., Exhibit A at Section 4.03).

The record evidences that the *res* of the Trust stayed virtually the same since its creation,

and the only "business" ever engaged in by the Trust was occasionally leasing the Crosby Avenue Property and the Florida Property and consistently leasing the commercial and residential units on the Union Avenue Property. (Champion's Verified App. at ¶¶ 36, 39, 40, 41 and 44; and Verified Application of Todd E. Trombetta ("Todd's Verified App.") at ¶¶ 6, 12, 13). While the Trustor was alive and competent, managing and leasing the Union Avenue Property was a task performed by Zwerdling herself. It further appears that Zwerdling claimed all profits and losses on her personal tax returns. (Champion's Verified App. at ¶ 50).

The Trust also provides for its termination:

> On the death of the Trustor, the Trustee shall distribute the principal of the Trust and any such accrued or undistributed income from the principal of the Trust in such a manner and to such persons, including the Estate or its Creditors, as directed in this Trust Agreement.

(Champion's Verified App., Exhibit A at Section 3.01). This termination provision is tempered only by Exhibit A to the Trust, titled "Additional Special Directives of Blanche Zwerdling Trustee and Trustor of the Blanche Zwerdling Revocable Living Trust" that states the following handwritten directive:

> I direct that my granddaughter Cheryle Trombetta receive the proceeds from my Prudential Life Insurance Policy # [xx-xxx]-596 in one lump sum, also my bank balances.
>
> I direct that my granddaughter Cheryle Trombetta receive the balance of my estate on a monthly basis to cover only her day to day living expenses and not to have control of the estate.

(Champion's Verified App., Exhibit A). Todd, through counsel, makes much of the directive to pay the balance of Zwerdling's estate to Cheryl on a month-to-month basis as evidence that the Trust was to continue after Zwerdling's death.

There are also various references in the Trust to probate and estate planning matters.

6

(Champion's Verified App., Exhibit A at Section 5.01(a), entitled, "Coordination with Trustor's Probate Estate"; Section 8.03, entitled, "Personal Property Distribution"; and Section 9.01, entitled "Perpetuities Savings Clause").

Zwerdling maintained her role as sole trustee from the Trust's creation in 1998 until eventually removed by court order in 2009. In or about May 2009, Todd filed a probate action in the Superior Court of New Jersey, Chancery Division, Probate Part, Passaic County ("Probate Court"), Docket No. P-197937, to declare Zwerdling incapacitated and to have himself appointed as Zwerdling's guardian. (Champion's Verified App. at ¶ 18). The Probate Court instead appointed Champion, an attorney with no relation to the family, as Zwerdling's Temporary Guardian. (*Id*. at ¶ 22).

On November 5, 2009, the Probate Court entered an Order adjudicating Zwerdling as a partially incapacitated person in need of a limited guardian of her person and property. (*Id*. at ¶ 22, and Exhibit B). The Order appointed Champion and Sandra Scala, Zwerdling's niece, as Co-Guardians of Zwerdling and Co-Trustees of the Trust. (*Id*.).

After several years, Champion ultimately resigned as Co-Guardian and Co-Trustee and the Office of the Public Guardian for the Elderly ("OPG") was appointed as Co-Guardian and Co-Trustee in her place. (*Id*. at ¶¶ 28 and 29). The OPG served as Co-Guardian of Zwerdling until she passed away on March 21, 2014. (*Id*. at ¶ 29).

On September 29, 2014, the Probate Court entered an Order relieving both the OPG and Scala as Co-Trustees of the Trust and appointed Todd as the Substitute Trustee of the Trust. (*Id*. at ¶ 30.

Following Todd's appointment, the Trust employed an on-site supervisor for the Union

Avenue Property, as well as a property management company. (Todd's Verified App. at ¶ 6).

Throughout the guardianship proceeding, the Probate Court judge entered orders awarding fees to court-appointed counsel and other attorneys involved in the case, including: Champion; Puccio (Court-appointed attorney for Zwerdling); Nemeth (Court-appointed Guardian ad litem for Zwerdling); and Mecca (former attorney for Todd). (Champion's Verified App. at ¶¶ 24, 25, and 26). The Orders regarding fee awards stated that to the extent Zwerdling's personal assets were insufficient to satisfy the attorney's fee awards, the assets of the Trust could be used to pay same. (Id. at ¶ 25, and Exhibit C). The fees are alleged to exceed $337,000.00 and are still outstanding. (Champion's Verified App. at ¶ 27, and Exhibit D). The fee awards have been docketed as judgments against Zwerdling and the Trust. (Champion's Verified App. at ¶ 32). There is an ongoing dispute in the Probate Court about satisfying the judgments. (*Id*. at ¶¶ 32 – 35). The last order entered by the Probate Court is a February 20, 2015 *Order Directing Listing of Property*, compelling the marketing and sale of the Union Avenue Property. (*Id*. at ¶ 34, and Exhibit G).

On the same date as entry of the *Order Directing Listing of Property*, February 20, 2015, Todd filed the instant bankruptcy case for the Trust.

On March 23, 2015, Champion filed the Motion to Dismiss requesting dismissal of the bankruptcy case on the basis that the Debtor was ineligible for relief. Subsequently, Puccio, Nemeth and Mecca filed letters in support of the Motion to Dismiss.

On April 3, 2015, Todd, acting on behalf of the Debtor, filed a *Verified Application in Opposition to the Motion to Dismiss* ("Opposition"). In the Opposition, Todd argues that the Trust was formed primarily for a business purpose and is a business trust eligible for bankruptcy relief. In support, he cites to certain provisions of the Trust and to Zwerdling's actions, *i.e.*,

8

keeping her original personal residence out of the Trust and "operating" the Union Avenue Property since its purchase. However, during oral argument counsel for the Debtor recognized that the original purpose of the Trust was "geared to some degree to assist Blanche Zwerdling . . . and personal expenses were taken out", but there was a "change in purpose" and the Court must now focus on current purpose of the Trust. Counsel argues that upon the death of Zwerdling the Trust changed in character and changed in purpose to be run as a business for profit. The change, counsel submits, is two-fold: (1) while revocable during Zwerdling's lifetime, the Trust is now irrevocable; and (2) the more efficient and profitable management of the Union Avenue Property by Todd. Accordingly, Todd, on behalf of the Debtor, asks this Court to make a distinction between the Trust as it existed prior to Zwerdling's death and the Trust as it existed after her death, when Todd became the successor trustee. Counsel appears to argue the "change in character" is sufficient to take this from an ineligible personal trust to an eligible business trust.

### III. ANALYSIS

Section 109(d) of the Bankruptcy Code provides that "[o]nly a . . . person that may be a debtor under chapter 7 of this title . . . may be a debtor under chapter 11 . . . ." 11 U.S.C. § 109(d). The Bankruptcy Code defines "person" to include individuals, partnerships and corporations. 11 U.S.C. § 101(41). The definition of "corporation" is limited to certain business entities, including a "business trust." 11 U.S.C. § 101(9)(A)(v). Accordingly, whether a trust is eligible for relief under the Bankruptcy Code depends on whether the trust is a "business trust."

The Third Circuit has not addressed the applicable criteria for what constitutes a "business trust" under Section 101(9)(A)(v). Both the Second Circuit and Sixth Circuit addressed the issue; both Circuit courts agreeing that there is no uniform standard. *Secured Equip. Trust of E.*

9

*Airlines, Inc. v. First Fidelity Bank* (*In re Secured Equip. Trust*), 38 F.3d 86, 89 (2d Cir. 1994)("a uniform body of law has not resulted and the decisions are, in fact, hopelessly divided."); *Kenneth Allen Knight Trust v. Schilling* (*In re Kenneth Allen Knight Trust*), 303 F.3d 671, 680 (6th Cir. 2002)("there are a number of court-made definitions, and indeed perhaps the only thing that all the cases have in common is the recognition that they all differ."). The Sixth Circuit also stated that "the definition of 'business trust' properly belongs to federal, rather than state, law." *In re Kenneth Allen Knight Trust*, 303 F.3d at 679.

While there is no uniform standard from these cases, the Second Circuit identified several factors for determining whether a trust is a business trust. *In re Secured Equip.Trust*, 38 F.3d at 89. First, "whether the trust at issue has the attributes of a corporation." *Id*. Second, whether the trust was "created for the purpose of carrying on some kind of business" or created "to protect and preserve the res." *Id*. Third, whether the trust engages in "business-like activities." *Id*. Fourth, whether the trust "transact[s] business for the benefit of investors." *Id*. at 90. And, fifth, whether there is "the presence or absence of a profit motive." *Id*. "Ultimately, each decision is based on a very fact-specific analysis of the trust at issue." *Id*. at 89. Importantly, "the inquiry must focus on the trust documents and the totality of the circumstances, not solely on whether the trust engages in a business." *Id*. at 90-91.

In *Secured Equipment Trust*, the Second Circuit upheld the bankruptcy court's decision that the trust was not a business trust. The bankruptcy court found that the trust was simply created as a vehicle to facilitate secured financing - its purpose was to preserve the interest guaranteed to the certificateholders, not to generate a profit. *Id.* at 90. Any business activity engaged in by the trust was incidental to protecting the certificateholders' security interests. *Id*.

10

Eight years after the Second Circuit's decision, the Sixth Circuit articulated a "primary purpose" test consisting of two propositions. *In re Kenneth Allen Knight Trust*, 303 F.3d at 680. First, "trusts created with the primary purpose of transacting business or carrying on commercial activity for the benefit of investors qualify as business trusts, while trusts designed merely to preserve the trust res for beneficiaries generally are not business trusts." *Id*. Second, "the determination is fact-specific, and it is imperative that bankruptcy courts make thorough and specific findings of fact to support their conclusions . . . regarding what was the intention of the parties, and how was it operated." *Id*.

In *Kenneth Allen Knight Trust*, the Sixth Circuit upheld the bankruptcy court's finding that the trust was a business trust. *Id*. The bankruptcy court concluded that the grantor of the trust treated the trust the same as his other business entities, the trust served as a "holding company" for his various business enterprises, and the "sole purpose" of the trust, "since its inception", was to transact business for the grantor and not just to preserve the *res* for the beneficiaries. *Id*. at 676. The Sixth Circuit rejected any notion that a business trust requires the existence of a transferable certificate of ownership. *Id*. at 679.

In support of his position, Todd relies on *Greate Bay Hotel & Casino, Inc. v. City of Atlantic City*, 264 N.J. Super. 213, 624 A.2d 102 (Ch. Div. 1993) and *In re Parade Realty, Inc.*, 134 B.R. 7 (Bankr. D. Haw. 1991). This reliance is misplaced. *Greate Bay Hotel & Casino* provides no guidance as it largely addressed whether a business trust had the same legal status as an unincorporated organization and the impact such a designation would have on a law firm's ability to represent the co-trustees of various trusts pursuant to the applicable Rules of Professional Conduct. 264 N.J. Super. at 216-17. *Greate Bay Hotel & Casino* is also inapposite to the case

11

here as what constitutes a business trust for bankruptcy purposes is a matter of federal law: "[w]hether an entity is eligible for relief under title 11 of the United States Code is purely a matter of federal law.  To hold otherwise would result in different results in different states and an entity would be eligible for relief in one state but not in another."  *Kenneth Allen Knight Trust*, 303 F.3d at 678-79, *quoting In re Arehart*, 52 B.R. 308, 310-11 (Bankr. M.D. Fla. 1985).

The other case relied on by Todd, *Parade Realty*, adopted the following test for determining whether a trust is a business trust: "1) the trust must be actively engaged in and doing business, 2) the trust must have some of the significant attributes of a corporation, primarily the transferability of interests in the trust, and 3) the trust must have been formed primarily for a business purpose."  134 B.R. at 11.  In relying on this case, Todd and his counsel gloss over one of the most salient points in the case – that to qualify as a business trust the trust must allow for the transfer of beneficial interests.  *Id*. (The Court uses the descriptors "primarily" and "especially" with regard to the attribute "transferability of interests").  Todd does not argue, nor is there any indication, that Cheryl's beneficial interest in the Trust is transferrable.  Todd also ignores the third prong of the case – that to qualify as a business trust, the "trust must have been *formed* primarily for a business purpose."  *Id.* (emphasis added).  Accordingly, the third prong of the test in *Parade Realty* actually cuts against the argument that the Court should consider the "change in character" of the trust following the Trustor's death.

In addition to the Circuit Court opinions cited above, this Court also finds instructive *In re Jin Suk Kim Trust*, 464 B.R. 697 (Bankr. D. Md. 2011) and *In re Rubin Family Irrevocable Stock Trust* (*Rubin Family Trust*), 2013 WL 6155606 (Bankr. E.D.N.Y. Nov. 13, 2013).

In *In re Jin Suk Kim Trust*, the court determined that a generation skipping trust established

by the mother of the income beneficiary to provide for the income beneficiary during her life and allow her to pass trust corpus to heirs designated in her will was a business trust. The court found the following facts supported a determination that the trust was a business trust:

> [F]rom the moment of its inception, Kim managed the Debtor to maximize its profits and the value of its assets in order to enhance the overall wealth of her family. She managed it, and the real estate assets it acquired, the same way she ran her other businesses, without regard to trust principals, including the traditional trust principals of prudent, diversified investment and protection of the trust res. She did not pay to the income beneficiary (*i.e.*, herself) any income from the Debtor, instead reinvesting it to maximize the Debtor's value . . . . Kim used the Debtor's initial real estate investment . . . in order to maximize the Debtor's value. While the Court would not conclude Kim's actions were reckless, they were not consistent with a fiduciary's obligation to prudently protect and preserve the res of a trust.
> . . .
> [T]he purpose of the Debtor was to transfer the economic interest of ninety percent of the Mattapony Center to Kim from her mother, in a manner that resulted in tax benefits, but which was intended to allow Kim to continue to manage the Mattapony Center and any other assets the Debtor acquired the same as she operated her other real estate ventures. It also allowed Kim to realize the value from the transfer if she chose while continuing to expand her real estate business as she saw fit.

*In re Jin Suk Kim Trust*, 464 B.R. at 704-6. In short, the Court found that the profit-making attributes and management of the trust far outweighed the estate planning benefit.

Finally, the Court in *Rubin Family Trust* found that the trust, despite being an estate planning vehicle, was in fact a business trust as its primary purpose was to do business. 2013 WL 6155606 at *9. The Court found:

> Here, there is no question that one of the purposes of the Trust is to create an estate-planning vehicle to preserve Robert's assets for the benefit of his family . . . Nevertheless, this does not necessarily mean that the Trust Debtors are not "business trusts," so long as their primary purpose is to do business.
> . . .

> The Trust Debtors borrowed and lent funds, invested, made, and lost millions of dollars in their various dealings . . . Surely, no one would consider such activity to be anything other than "business activity" with a "profit motive" in the common, ordinary sense of these terms.
>
> Moreover, the manner in which the Trust Debtors conducted business is clearly inconsistent with the notion that their primary purpose was to "protect and preserve" the res, because they continually put hundreds of thousands (at times millions) of dollars' worth of the *res* at great risk in the course of chasing profits.

*Id*.

It is evident from the case law that whether a trust is a business trust is a fact-sensitive determination that goes beyond just the trust documents. The focus is on both the purpose of the trust and the actual operations of the trust. A trust that contains provisions regarding the distribution of the trust corpus upon the death of a trustor, does not preclude a finding that the trust is a "business trust" so long as its primary purpose is to do business. On the other hand, just because a trust engages in business like activities, without more, it does not necessarily follow that the trust is a business trust.

The facts present in *Kenneth Allen Knight Trust*, *Jin Suk Kim Trust*, and *Rubin Family Trust*, simply do not exist here.

As the facts here reflect, the only stated purpose of the Trust in the trust documents was to hold title to real and personal property for the benefit of the Trustor and for the orderly transfer of the assets upon the death of the Trustor. And, in fact, this appears to be what happened up until the time of the Trustor's death. Upon its inception in 1998, the Trust *res* consisted of certain of Zwerdling's personal assets and bank accounts and, most notably, three (3) parcels of real property: the Union Avenue Property, the Florida Property and the Crosby Avenue Property. The Trust *res* did not change in any meaningful way until the sale of the Florida Property in 2002. At

one time, the Crosby Avenue Property was used as the Trustor's primary residence, along with her granddaughter, the beneficiary.

And the Union Avenue Property, the 18 unit mixed use commercial and residential building, continued to lease and maintain the units. Other than the business activity ancillary to preserving the Union Avenue Property, there is nothing in the Trust documents, or the activity of the Trust, that speaks of ongoing business operations. In fact, the Trust documents do not even mention the fact that the Union Avenue Property consisted of multiple units and was meant to be rented – it was simply an asset of the Trust, identified only by its address. Moreover, as counsel for Champion noted during oral argument, the "continuing business provisions" in the Trust (Section 4.03(o)) are typical in estate planning and such provisions are set forth in the New Jersey Probate Code. N.J.S.A. 3B:14-23v. In any event, by the time this matter reached oral argument, counsel for the Debtor did not dispute that the primary purpose of the trust at the time of its creation was "geared to some degree to assist Blanche Zwerdling."

Rather, counsel argued that after Todd's appointment as Trustee, there was essentially a "change in character" of the Trust, such that the primary purpose became transacting business with a profit motive. I am not convinced. First, there is nothing to indicate that the Trust was treated differently in any meaningful way since its creation to the present. Factually, the Trust maintained the same exact *res*, save for the sale of one parcel of real property in 2002. And the Trust *res*, in particular the Union Avenue Property that is the main focus in this proceeding, has always been a mixed used commercial and residential property that was managed and rented. The only difference Todd can point to now is the fact that a management company was put in place to handle the leasing and maintenance, a function previously performed by Zwerdling herself.

15

Second, even if there was a meaningful "change of character," Todd offered no case law to support the contention that a trust, that functioned as a personal, testamentary trust from its creation in January 1998 until the Trustor's death in March 2014, a span of sixteen (16) years, can be transformed into a business trust as a result of management by a successor trustee for only five (5) months until he caused the filing of this bankruptcy on February 20, 2015. Even the case law relied on by Todd explicitly states that "the trust must have been formed primarily for a business purpose." *In re Parade Realty*, 134 B.R. at 11. Refocusing a trust after the death of a trustor does not create a new trust. Arguably, it only moves the functioning of a trust away from its original purpose.

Also pertinent to the Court's decision that the Trust is not a business trust eligible for bankruptcy relief is the fact that the Trust was managed under the supervision of the Probate Court from approximately May 2009 until February 20, 2015, when the Debtor filed this case. Equally important is the fact that the probate action was commenced by Todd, who filed the Chapter 11 petition on behalf of the Trust.

The real issues here appear to stem from the probate of Zwerdling's estate, including the Trust. The current status of the probate matter appears to be either a dispute over fees owed to the Court-appointed professionals, as well as former counsel for Todd, or, how to satisfy those fees. Before the Debtor filed for bankruptcy, there was a directive by the Probate Court to sell the Union Avenue Property in order to pay professional fees. Todd, as Trustee, failed to do so, instead filing a Chapter 11 bankruptcy petition for the Trust on the same day that the Probate Court entered the Order. Debtor's counsel admitted to this delay tactic during oral argument, explaining Todd was "buying time to sell the Crosby Avenue Property to pay off creditors" and avoid selling the Union

Avenue Property as ordered by the Probate Court. This is a fight for the Probate Court; it does not belong in the Bankruptcy Court.

Because I find the Trust is not a business trust, and therefore ineligible for bankruptcy, I do not need to address the allegation that the petition was filed in bad faith.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted.

Dated: June 11, 2015

/s/ *Novalyn L. Winfield*
NOVALYN L. WINFIELD
UNITED STATES BANKRUPTCY JUDGE